IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL SUBOTICH and
JENNIFER SUBOTICH,

    Plaintiffs,

v.                    Case No. 2:15-CV-219

LIUYANG DUN PAI FIREWORKS MFG.
d/b/a Dominator Export Fireworks, CERTAIN
UNDERWRITERS AT LLOYD'S, LONDON, and
TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

    Defendants.

## CERTAIN UNDERWRITERS AT LLOYD'S, LONDON'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXTEND TIME

Defendant, Certain Underwriters at Lloyd's, London ("Certain Underwriters"), by its attorneys, von Briesen & Roper, s.c., submits this Reply Memorandum of Law in Support of Its Motion to Extend Time, pursuant to Fed.R.Civ.P. 6(b), as follows:

## **INTRODUCTION**

Plaintiffs' oppose Certain Underwriters' request to extend time based almost exclusively on a one-sided recitation of oral communications between Plaintiffs' paralegal and Certain Underwriters' agent for service. Even accepting Plaintiffs' slanted account as true, the oral communications confirm that Plaintiffs were fully aware Certain Underwriters' was investigating Plaintiffs' vague allegations, and Plaintiffs cut off communications upon learning that Certain Underwriters did not issue a policy to the primary defendant, Dun Pai, and thus Plaintiffs would not prevail against Certain Underwriters on the merits. Rather than allow the case to proceed on

the merits, Plaintiffs evaded Certain Underwriters' attempts to communicate, and then reappeared at the courthouse four days later with a motion for default judgment.

Plaintiffs do not demonstrate prejudice if an extension is granted, nor do they even attempt to explain why this Court should deviate from its well-established policy in favor of deciding cases on the merit. Therefore, Certain Underwriters respectfully request that the Court grant its motion to extend time, and accept the Answer and Affirmative Defenses filed by Certain Underwriters on June 23.

## SUPPLEMENTAL FACTS

Plaintiffs base their opposition almost entirely on the recollections of their paralegal, Kenneth Jarvis, concerning his oral communications with Barbara Demosthene, who is an associate attorney at Mendes & Mount, LLP. Ms. Demosthene's recollection is far different than Mr. Jarvis's:

Mendes received service of the suit on April 14, 2015. (Affidavit of Barbara Demosthene, dated July 27, 2015 ("Demosthene Aff."), ¶ 2.) The suit did not provide any policy information other than to state that the suit was against "Certain Underwriters at Lloyd's." (Demosthene Aff., ¶ 2.) The suit did not state which of the numerous Lloyd's Underwriting Syndicates, each of which are separate and distinct legal entities, were being sued. (Id.)

On April 14, 2015, Ms. Demosthene contacted Plaintiffs' counsel, Tim Trecek, to obtain policy information in an attempt to determine which Lloyd's Underwriting Syndicate subscribed to the purported policy at issue. (Demosthene Aff., ¶ 3.) Ms. Demosthene explained that she worked for Mendes & Mount, which is the agent for service of suit on behalf of Certain Underwriters when designated in certain policies. (Id.) She told Mr. Trecek that the Amended Complaint did not identify any specific Underwriters and that he had not provided sufficient

information to identify the subscribing Underwriters. (Id.) Ms. Demosthene asked Mr. Trecek for additional policy information. (Id.)

Mr. Trecek advised that he did not have any evidence that a policy was in place for the referenced date of loss. (Demosthene Aff., ¶ 4.) He stated that Certain Underwriters at Lloyd's was named because it had previously insured another company allegedly involved in the incident (but not named in the lawsuit). (Id.) Mr. Trecek speculated that Underwriters may have insured Dun Pai on the date of loss. (Id.) He agreed to provide additional policy information. (Id.)

On April 14, 2015, Ms. Demosthene sent an email to Mr. Trecek and Mr. Jarvis requesting additional information regarding the alleged policy and advising that she would be unable to identify the subscribing Underwriters without the requested information. (Demosthene Aff., ¶ 5.) She requested that they provide, "information regarding the existence of the alleged policy issued by Underwriters, including a copy of the policy, contact details for an attorney, broker, adjuster and/or cover holder." (Id.) Although Mr. Trecek and Mr. Jarvis apparently had a copy of the policy issued to Pyro Innovation, Inc., they did not provide it. (Id.)

On April 20, 2015, Mr. Jarvis called Ms. Demosthene to provide policy information. (Demosthene Aff., ¶ 6.) Mr. Jarvis provided the policy number of CSI-928676-12, BAA-CUG110942 and identified the insured as Pyro Innovations, Inc. or Dun Pai Lin Yang. (Id.) Mr. Jarvis did not provide a copy of the policy. (Id.) Mr. Jarvis advised Ms. Demosthene that the policy appeared to be led by the Beazley syndicate. (Id.) Based solely on Mr. Jarvis's representation, Ms. Demosthene sent a copy of the Amended Complaint to the Beazley syndicate. (Id.)

On June 16, 2015, Mr. Jarvis left a message inquiring whether Beazley had identified a policy. (Demosthene Aff., ¶ 7.) Ms. Demosthene advised Mr. Jarvis that Beazley determined there was no policy issued to Dun Pai for the referenced date of loss. (Demosthene Aff., ¶ 8.)

Mr. Jarvis asked if Ms. Demosthene was aware of any policy issued through any other Underwriter for any of the named insureds. (Id.) Ms. Demosthene told Mr. Jarvis that as an agent for service of suit, Mendes & Mount does not have access to policy information. (Id.) Ms. Demosthene explained that in this matter, as with all suits that Mendes & Mount receives, the only policy information available is the information provided in the suit papers. (Id.) Therefore, contrary to Mr. Jarvis's assertions, Ms. Demosthene did not, and could not, advise Mr. Jarvis that she "thought Beazley did have a policy subsequent to the [Pyro Innovation, Inc. policy]." (Id.)

Ms. Demosthene asked Mr. Jarvis if he had any other information regarding the alleged policy. (Id.) He did not. (Id.) Mr. Jarvis's only basis for believing that a Certain Underwriters' policy existed for the date of loss was the existence of the previous policy issued to Pyro Innovations, which had expired before the date of the loss. (Id.)

Mr. Jarvis requested a letter stating that no Lloyd's Underwriting Syndicate had subscribed to a policy for the referenced date of loss. (Demosthene Aff., ¶ 9.) Neither Mendes & Mount nor Beazley could possibly make such a representation as to all Lloyd's Underwriting Syndicates. *Id.* Mr. Jarvis then requested an answer to the Amended Complaint. (Id.)

Contrary to Plaintiffs' allegations, Ms. Demosthene never made any statement as to the "time and expense" of answering the Amended Complaint. (Demosthene Aff., ¶ 10.) As Ms. Demosthene told Mr. Jarvis, Mendes & Mount's role was limited to agent for Service of Suit

where designated in the policy, not as defense counsel; therefore, Mendes & Mount would not be discussing or preparing the responsive pleading as that would come from another firm. (Id.)

Ms. Demosthene advised Mr. Jarvis that she would be out of the office on June 19, 2015, but hoped to have a response by the end of the following week. (Demosthene Aff., ¶ 11.) Mr. Jarvis agreed that if there was no policy, it would be pointless to pursue the action against Underwriters, much less move for a default. (Demosthene Aff., ¶ 12.) Mr. Jarvis stated that Plaintiffs would not move for default immediately. (Demosthene Aff., ¶ 11.) Mr. Jarvis never demanded that Ms. Demosthene contact him by June 18, 2015, nor did Ms. Demosthene promise to contact him by June 18, 2015, to avoid a default. (Id.)

On June 19, 2015, Certain Underwriters' Wisconsin counsel, von Briesen & Roper, s.c., began attempting to contact Plaintiffs' counsel to discuss a potential voluntary dismissal or to coordinate a stipulation and order to extend time to answer if Plaintiffs were unwilling to dismiss Certain Underwriters. (Affidavit of Heidi L. Vogt, dated June 23, 2015, Dkt. No. 20 ("Vogt Aff."), ¶5.) Plaintiffs' counsel evaded von Briesen & Roper and skipped a prearranged call only to file a motion for default, without advance notice to Certain Underwriters. (Vogt Aff., ¶¶ 6-7.)

Plaintiffs also challenge the Declaration of Susan Preston which addresses the Pyro Innovation Policy.[1] Ms. Preston's Declaration is more than adequate to demonstrate that Certain Underwriters should not be in this case considering the only basis for Plaintiffs' claim against Certain Underwriters is the Pyro Innovation Policy, which is an expired policy that does not even insure Dun Pai. The Pyro Innovation Policy supplied by Plaintiffs was issued by the Beazley

---

[1] Plaintiffs obsess over the fact that Ms. Preston submitted a declaration instead of an affidavit – yet another reminder that Plaintiffs prefer style over substance. Both the Federal Rules of Civil of Procedure and this Court's Local Rules recognize the evidentiary value of declarations. *See* Fed.R.Civ.P. 56(c)(1)(a), Civil L. R. 7(a)(1). Nevertheless, solely for the purpose of avoiding further distraction from the merits of this case, Certain Underwriters has submitted an Affidavit of Susan Preston.

Furlonge Ltd Syndicate Nos. 0623 and 2623 (collectively, "Beazley Syndicates"). (Affidavit of Susan Preston, dated July 27, 2015 ("Preston Aff."), ¶ 2.) Ms. Preston is President of Professional Program Insurance Brokerage ("PPIB"), which is the exclusive program manager authorized to quote, bind, and issue policies of Pyrotechnic Liability Policies on behalf of the Beazley Syndicates. (Preston Aff., ¶¶ 4-5.) Ms. Preston's job requires her to be familiar with Pyrotechnic Liability Policies issued on behalf of the Beazley Syndicates in effect as of January 1, 2013, which would include the Pyro Innovation Policy.[2] (Preston Aff., ¶ 5.) The Pyro Innovation Policy expired on April 29, 2013, and was not renewed. (Preston Aff., ¶ 6.) On July 4, 2013, and after, there were no policies issued on behalf of the Beazley Syndicates insuring Liuyang Dun Pai Fireworks, Mfg. d/b/a Dominator Export Fireworks, Matthew Palaszynski, or Pyro Innovations, Inc. (Preston Aff., ¶ 7.)

## ARGUMENT

Courts are permitted to grant extensions after the time for an act has expired if the party failed to act because of excusable neglect. Fed.R.Civ.P. 6(b); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th. Cir. 2006). The Seventh Circuit has adopted the "flexible understanding" of "excusable neglect," meaning it is "understood to encompass situations in which the failure to comply with the filing deadline is attributable to negligence" and not limited strictly to omissions caused by circumstances beyond the control of the movant. *Raymond*, 442 F.3d at 606.

Certain Underwriters' failure to timely answer the Amended Complaint was due to excusable neglect. Certain Underwriters trusted Plaintiffs' counsel when they agreed not to seek default while the parties were working through core issues related to Plaintiffs' claims. Certain Underwriters expected candor from opposing counsel and anticipated that opposing counsel

---

[2] Prior to January 1, 2013, Combined Specialties Insurance ("CSI") served as the exclusive program manager with respect to policies of Pyrotechnic Liability Insurance issued on behalf of the Beazley Syndicates.

would adhere to the *Standards of Professional Conduct Within the Seventh Federal Judicial Circuit* by providing notice before rushing to the courthouse with a motion for default judgment. Lastly, Certain Underwriters believed that opposing counsel was truly unavailable June 19-23, and not working surreptitiously on a motion for default judgment.

Certain Underwriters conduct is particularly excusable considering the investigation was prompted by Plaintiffs' vague allegations. As Certain Underwriters reminded Plaintiffs' counsel throughout the investigation, the policy Plaintiffs rely upon as their only basis to bring a claim against Certain Underwriters – an expired policy issued to an entirely separate entity – is insufficient to allow Certain Underwriters to determine if a policy was issued to Dun Pai on the date in question. Certain Underwriters should not be punished – and Plaintiffs rewarded – for taking the time to thoroughly investigate Plaintiffs' insufficient pleading.

### A. The oral communications between Plaintiffs and Certain Underwriters establish "excusable neglect."

Certain Underwriters prefers to spare the Court from a detailed back and forth concerning the parties' oral communications. However, Plaintiffs rely almost exclusively on those oral communications to oppose Certain Underwriters' motion to extend time and, thus, Certain Underwriters is compelled to respond. As set forth above and below, Ms. Demosthene's has a far different recollection of those communications.

During the early communications, Plaintiffs provided either no information or misleading information in response to Certain Underwriters' request for information regarding the existence of the alleged policy. For instance, when Ms. Demosthene demanded additional policy information, Mr. Jarvis stated that the Pyro Innovation Policy was issued to Pyro Innovations, Inc. *or* Dun Pai, when Mr. Jarvis knew or should have known that the policy was <u>not</u> issued Dun Pai. Further, despite having possession of the Pyro Innovation Policy, Plaintiffs refused to

produce it. Plaintiffs may have refused because the Pyro Innovations Policy was plainly expired and not issued to Dun Pai and, thus, it did not give Plaintiffs a good faith basis to maintain a claim against Certain Underwriters.

Mr. Jarvis did accurately communicate one fact – the Pyro Innovation Policy was issued by the Beazley Syndicates. Ms. Demosthene thus vetted the purported policy information with the Beazley Syndicates, who concluded there were no policies issued to Dun Pai on the date of the incident in question. Ms. Demosthene relayed this information to Mr. Jarvis.

Rather than accept this information, Mr. Jarvis made additional, unreasonable demands. Mr. Jarvis demanded confirmation from every single Certain Underwriters syndicate that they did not issue a policy to Dun Pai that was in place on the date in question. Plaintiffs had already made the questionable decision to sue Certain Underwriters without any evidence that a policy was issued to Dun Pai, failed to properly name and serve the Certain Underwriters syndicates at issue (whomever they may be), and provided misleading information regarding the existence of a policy issued to Dun Pai. Now, after all of that, Plaintiffs asked Mendes & Mount to help Plaintiffs' meet their burden of proof by investigating whether any of the independent and separate syndicates issued a policy to Dun Pai that was in effect on the date in questions. After Ms. Demosthene explained why Mendes & Mount cannot meet Plaintiffs' unreasonable request, Plaintiffs cut of communications, and began working on a motion for default judgment.

Contrary to his assertions, Mr. Jarvis did not provide a deadline by when he intended to file a motion for default judgment. In fact, Mr. Jarvis agreed that if Certain Underwriters did not issue a policy, it would be pointless to pursue the case against Certain Underwriters, much less move for a default. Mr. Jarvis even assured Ms. Demosthene that Plaintiffs would not move for a default and that he would contact Ms. Demosthene before taking any adverse action.

Even accepting as true Mr. Jarvis's version of events – that Plaintiffs advised Certain Underwriters they would wait until June 22, 2015 before "moving forward with the court" – Certain Underwriters met the purported deadline. von Briesen & Roper attempted to contact Plaintiffs' counsel on June 19, 2015, but Plaintiffs' counsel refused to take the call. von Briesen & Roper was finally able to schedule a call with Plaintiffs' counsel to be held on Monday, June 22, before the purported deadline expired to discuss the terms of a dismissal or formal extension to answer. Plaintiffs agreed to take the call, but then canceled last minute, rescheduling the call for June 23rd. Then, on June 23rd, after evading Certain Underwriters for four days, Plaintiffs filed the motion for default judgment. Thus, even assuming, *arguendo*, that a June 22nd deadline was set, Plaintiffs did not allow Certain Underwriters the opportunity to meet that deadline.

Certain Underwriters also contests the notion that Ms. Demosthene advised Mr. Jarvis that Certain Underwriters wanted to avoid the "time and expense" of answering the Amended Complaint, nor did she make any representations about the existence of any policy subsequent to the Pyro Innovation policy. As to the former, Mendes & Mount serves as agent for service under certain policies. It is not acting as defense counsel in this case. Mendes & Mount would therefore have no reason (or basis) to comment on the time and cost of defending this case. As to the latter, neither Ms. Demosthene nor Mendes & Mount has access to policy information. They simply have no basis to offer any conclusions, let alone speculation, about which policies may have been issued.

Plaintiffs have resorted to gamesmanship because the merits defeat them. Plaintiffs played hide the ball with their evidence, and then made unreasonable demands of Mendes & Mount. Plaintiffs went back on their word when they sought default judgment despite multiple agreements not to do so without advance notice. This lack of candor toward opposing counsel

and the court should not be rewarded, particularly in a circuit that values deciding cases on their merit. *Lyle M.G. – Qian Son v. Bd. of Trs.*, 473 F.3d 799, 811 (7th Cir. 2007).

      **B.     The case law cited by Plaintiffs undermines their arguments.**

Plaintiffs make the overreaching conclusion that any time deliberate conduct is involved in the failure to timely answer, there can be no "excusable neglect." The cases cited by Plaintiffs do not support such a sweeping generalization, and actually undermine Plaintiffs' position by demonstrating that Certain Underwriters' situation presents a textbook example of excusable neglect.

Plaintiffs lead with *Patrick Collins, Inc. v. Lowery*, 2013 WL 6383860 (S.D. Ind. Dec. 4, 2013) and *Edwards-Brown v. Crete-Monee, 201-U Sch. Dist.*, 491 F.App'x 744, 747 (7th Cir. 2012) to contend that "deliberate decisions" and "excusable neglect" are mutually exclusive. Both *Collins* and *Edwards-Brown* involved plaintiffs who filed Rule 60(b) motions to vacate dismissal orders <u>which plaintiffs themselves had previously requested</u>. The courts declined to vacate the dismissal orders on the basis of "excusable neglect" since plaintiffs had deliberately requested the dismissal orders be entered in the first instance. The courts expressly noted, however, that while "excusable neglect" did not apply to plaintiffs' conduct, it does cover "unintentional omissions, such as missed filing deadlines." *Collins* at \*4; Edwards-*Brown*, 491 F.App'x at 747. This is the exact relief Certain Underwriters seeks here – relief related to an "unintentional omission," a "missed filing deadline."

The other cases cited by Plaintiffs involved parties who egregiously and deliberately flouted rules and procedures, ultimately leading to default. If anything, these cases stand in stark contrast to the more reasoned conduct of Certain Underwriters. *See, e.g., Wolf Lake Terminals, Inc. v. Mutual Marine Ins. Co.*, 433 F. Supp. 2d 933, 942 (N.D. Ind. 2005) (court <u>denied</u> default

judgment where answer was ten weeks late and filed seven days after motion for default was filed, relying in part on the non-defaulting parties' failure to adhere to the *Standards of Professional Conduct Within the Seventh Federal Judicial Circuit*, which Plaintiffs have also violated); *Davis v. Hutchins*, 321 F.3d 641, 646-47 (7th Cir. 2003) (order for default judgment sustained where the court found the "lengthy list" of defendant's failings displayed a willful choice not to exercise even a minimum level of diligence, including responding to discovery requests with smiley faces, failing to comply with numerous procedural requirements and failing to attend hearings); *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202 (7th Cir. 1984) (circuit court did not abuse its discretion in refusing to vacate default judgment where default was entered after appellants repeatedly failed to respond to interrogatories within the time set by the court, failed to contact the court until more than two months after default was entered, and numerous other instances of inexcusable conduct); *Hal Commodity Cycles Management Co. v. Kirsch*, 825 F.2d 1136 (7th Cir. 1987) (the Seventh Circuit described the defaulting party's conduct as follows: "Without going into painful detail, the record is replete with instances of dilatory conduct on Kirsch's part as well as a complete lack of respect for the orderly process of the court. Kirsch continually failed to honor court deadlines, respond to discovery requests, respond to motions, and attend scheduling conferences"); *Santangelo v. Cantrell*, 2015 WL 2449589, *3 (N.D. Ind. 2015) (court found party to be in default "because he has generally failed to comply with the rules, procedures, and deadlines of this court despite its prior leniency in accepting procedurally defective filings and granting him extensions to obtain counsel and for a personal matter.").

Unlike the cases relied upon by Plaintiffs, Certain Underwriters has not exhibited a pattern of intentional disregard for procedures and deadlines, nor has Certain Underwriters taken

any affirmative steps to have default judgment entered. Instead, Certain Underwriters sought an orderly resolution in this case, and relied on what they believed to be good faith representations by opposing counsel, which ultimately led to a motion for default judgment. Unlike the cases cited above, the missed deadline in this case was due to "excusable neglect."

### C. The factors cited by Plaintiffs resolve in favor of Certain Underwriters.

Plaintiffs cite, but barely address, the following factors for analyzing "excusable neglect": (1) danger of prejudice to the non-moving party; (2) the length of delay and impact of delay on judicial proceedings; and (3) reasons for delay, including whether it was within the reasonable control of the movant and whether the movant acted in good faith. (Plaintiffs' Brief in Response at p. 9).

Plaintiffs make a half-hearted attempt to satisfy the first factor – prejudice – by contending that formal discovery has been delayed. Plaintiffs neglect to mention that the main defendant in this case, Dun Pai, has not even been served. Further, the most pressing (and perhaps only) discovery Plaintiffs need from Certain Underwriters is information related to a purported policy. Certain Underwriters has already been investigating and providing that information to Plaintiffs without the expense of formal discovery. Furthermore, Plaintiffs are at fault for any delays in this case. Certain Underwriters answered the Amended Complaint more than one month ago. Plaintiffs could have commenced formal discovery immediately – or even earlier – but opted instead to engage in months of motion practice. Simply put, Plaintiffs' have not and cannot demonstrate prejudice if Certain Underwriters' motion is granted.

Plaintiffs fail to address the length of the delay and whether it will impact judicial proceedings. Certain Underwriters has already answered the Amended Complaint, and it is prepared to litigate this case without delay. Plaintiffs still have not served the primary defendant and, thus, they cannot seriously contend that judicial proceedings have been delayed. Length of

delay also favors Certain Underwriters. They now claim they set a June 22 deadline for answering the Amended Complaint. Certain Underwriters answered on June 23. Thus, even under Plaintiffs' recitation of facts, the length of delay was only one day.

Finally, the reason for the delay and whether the movant acted in good faith clearly resolves in Certain Underwriters' favor. Certain Underwriters was attempting to determine whether a policy was issued to Dun Pai and in effect on the date of the alleged incident. In other words, Certain Underwriters was doing the basic investigative legwork that Plaintiffs should have completed before suing Certain Underwriters. Certain Underwriters kept Plaintiffs abreast during the investigation, and made reasonable attempts to keep the lines of communication open. Plaintiffs, on the other hand, ended communications once it became clear their claims had no merit, and rushed to the courthouse with a motion for default judgment. If any party failed to proceed in good faith, it is Plaintiffs.

### D. The Amended Complaint does not Establish Coverage.

Plaintiffs allege that "prior to" the date of the alleged incident, Certain Underwriters had policies of insurance in place for Dun Pai. Setting aside the fact that this allegation is wrong, it has no bearing on whether Certain Underwriters issued a policy of insurance to Dun Pai that was in place on the date of the alleged incident.

Plaintiffs also fail to identify the specific policy at issue or the syndicates subscribing to the policy. The proper way to bring a suit against Certain Underwriters is to sue those underwriters subscribing to a particular policy. Indeed, courts have observed that by suing the defendant as "Certain Underwriters at Lloyd's, London" (as Plaintiffs do here), "[t]he defendant described in the amended complaint is not an entity capable of being sued, anymore than 'a certain driver in Broward County' would be a proper defendant in a case arising from an

automobile accident." *Certain Underwriters at Lloyd's, London v. Gibraltar Budget Plan, Inc.*, 9 So. 3d 646 (Fla. App. 2009). Therefore, even if Plaintiffs obtain default judgment, they have not obtained judgment against a particular policy or entity capable of being sued. A default judgment in this case would be meaningless, and would only lead to additional motion practice.

## CONCLUSION

Based on the foregoing, Certain Underwriters respectfully requests that the Court deny Plaintiffs' Motion for Default Judgment.

Dated this 27th day of July, 2015.

        By:   s/ Heidi L. Vogt
        Heidi L. Vogt, SBN 1001318
        Jason R. Fathallah, SBN 1060040
        *Attorneys for Certain Underwriters*
        *at Lloyd's, London*
        von BRIESEN & ROPER, s.c.
        411 East Wisconsin Avenue, Suite 1000
        Milwaukee, WI 53202
        Phone: (414) 287-1258
        Fax: (414) 276-6281
        E-mail: hvogt@vonbriesen.com and
        jfathallah@vonbriesen.com

25611048_1.DOC